**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

COLIN LEI YIN, FANG WANG,
YUEPING HUANG, and YU
ZHANG, *on behalf of themselves*
*and all others similarly situated,*

                      Plaintiffs,

        v.

CARIBBEAN BLUEWATERS GROUP, LLC
d/b/a YIHAN SPA, "Amy" Su (first name
unknown), and Geoffrey Allard,

                  Defendants,

-----------------------------------------------------------------X

Case No:

**COLLECTIVE ACTION**
**COMPLAINT**

      Plaintiff Colin Lei Yin ("Plaintiff Yin"), Plaintiff Fang Wang ("Plaintiff Wang"), Plaintiff Yueping Huang ("Plaintiff Huang"), and Plaintiff Yu Zhang ("Plaintiff Zhang") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, Hang & Associates, PLLC, hereby bring this complaint against Defendants CARIBBEAN BLUEWATERS GROUP, LLC d/b/a YIHAN SPA, "Amy" Su (first name unknown), and Geoffrey Allard, (collectively "Defendants") and alleges as follows:

## INTRODUCTION

      1.    This action is brought by Plaintiffs, on behalf of themselves as well as other employees similarly situated, against Defendants for alleged violations of the Federal Labor Standards Act, ("FLSA") 29 U.S.C. §§ 201 *et seq.*, and of New York Labor Law §§190 et seq. ("NYLL"), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, compensation for all hours worked, minimum wage, and overtime compensation for all hours worked over forty (40) each workweek, as well as failing to provide their employees, including Plaintiffs, with wage notice at the time of hiring and wage statements.

3.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) liquidated damages, (4) prejudgment and post-judgment interest; and/or (5) attorneys' fees and costs;

4.      Plaintiffs further allege pursuant to NYLL §190 et seq. and Title 12 of New York Codes, Rules and Regulations Part 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime compensation, (3) unpaid spread of hours premium, (4) compensation for failure to provide wage notice at the time of hiring and failure to provide paystubs in violation of the NYLL, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid overtime, and unpaid spread of hours pursuant to the NY Wage Theft Prevention Act; (6) prejudgment and post-judgment interest; and (7) attorney's fees and costs.


**JURISDICTION AND VENUE**

5.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.       Plaintiff Yin is an individual residing in Queens, New York.

8.      From on or around November 5, 2018 to on or around February 12, 2019, Plaintiff Yin was employed as a massage therapist in Defendants' spa business under the name Yihan Spa located at 926 2nd Avenue, Unit 2, New York, NY 10022.

9.      Plaintiff Wang is an individual residing in Queens, New York.

10.      From on or around October 1, 2017 to on or around February 13, 2019, Plaintiff Wang was employed as a cosmetologist in Defendants' spa business under the name Yihan Spa located at 926 2nd Avenue, Unit 2, New York, NY 10022.

11.      Plaintiff Huang is an individual residing in Queens, New York.

12.      From in or about January 10, 2019 to on or about February 12, 2019, Plaintiff Huang was employed as an esthetician in Defendants' spa business under the name Yihan Spa located at 926 2nd Avenue, Unit 2, New York, NY 10022.

13.      Plaintiff Zhang is an individual residing in Brooklyn, New York.

14.      From on or about November 7, 2018 to on or about January 16, 2019, Plaintiff Zhang was employed as a cosmetologist in Defendants' spa business under the name Yihan Spa located at 926 2nd Avenue, Unit 2, New York, NY 10022.

## DEFENDANTS

*Corporate Defendant*

15.     Upon information and belief, Caribbean Bluewaters Group, LLC d/b/a Yihan Spa ("Corporate Defendant or Defendant Corporation") is a domestic business corporation organized under the laws of the State of New York with a principal place of business located at 926 2nd Avenue, Unit 2, New York, NY 10022.

16.     Upon information and belief, Corporate Defendant has about eight (8) employees.

17.     Upon information and belief, Corporate Defendant at all relevant times is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

18.      Upon information and belief, Corporate Defendant purchased and handled goods moved in interstate commerce. For instance, Corporate Defendant has employees who handled and worked on goods moved in commerce such as massage supplies and spa supplies.

19.     At all times relevant times, Corporate Defendant was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

***Owner/ Operator Defendant: Amy Su***

20.     Upon information and belief, Defendant Amy Su ("Defendant Su") is the owner, chief executive officer, director and/or managing agent of Defendant Corporation and participated in the day-to-day operations of Defendant Corporation and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2; NYLL §2 and the regulations thereunder; and is jointly and severally liable with Defendant Corporation.

21.     Upon information and belief, Defendant Su owns the stock of Defendant Corporation and manages and makes all business decisions regarding Defendant Corporation,

including but not limited to determining the amount of salary the employees will receive and the number of hours employees will work.

22.     Upon information and belief, Defendant Su determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established work schedules and work load of the employees, maintained employee records, and had the authority to hire and fire employees.

### *Owner/ Operator Defendant: Geoffrey Allard*

23. Upon information and belief, Defendant Geoffrey Allard ("Defendant Allard") is the owner, chief executive officer, director and/or managing agent of Defendant Corporation and participated in the day-to-day operations of Defendant Corporation and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2; NYLL §2 and the regulations thereunder; and is jointly and severally liable with Defendant Corporation.

24. Upon information and belief, Defendant Allard owns the stock of Defendant Corporation and manages Defendant Corporation, including but not limited to supervising employees of Defendant Corporation and handling paychecks of Defendants' employees.

25. At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendants.

26. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/ or conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

27. Plaintiffs bring this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants at their nail salon locations for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") (the "Collective Action Members"). Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than ten (10) Collective Action members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

28. Plaintiffs will fairly and adequately protect the interests of the Collective Action Members, and have retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

29. This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

30. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

31. Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiffs and other Collective Action Members are:

a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b. Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

c. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

32. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

33. Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

**<u>STATEMENT OF FACTS</u>**

34. Defendants committed the following alleged acts knowingly, intentionally and willfully.

35. Defendants knew that the nonpayment of minimum wage, nonpayment of overtime pay, the failure to pay spread of hours premium, failure to provide the required wage notice at the time of hiring, as well as the failure to provide the required wage statement with every payment of wages would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

### Plaintiff Yin

36. From on or around November 5, 2018 to on or around February 12, 2019, Plaintiff Yin was employed as a massage therapist in Defendants' spa business under the name Yihan Spa located at 926 2nd Avenue, Unit 2, New York, NY 10022.

37. Upon information and belief, Defendant Su, known as "Lady Boss" to Plaintiffs, is the owner/shareholder of Defendant Corporation and maintains active operational control over Defendant Corporation, including but not limited to hiring and firing employees, supervising and controlling the employees, setting their work schedule, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

38. Upon information and belief, Defendant Allard, known as fiancée of Defendant Su, was present at the spa every day, and was in charge of arranging clients, supervising the performance of Defendants' employees, monitoring the online feedback of Defendants' employees, as well as handling employees' paychecks when Defendant Su was not present at the spa.

39. Defendant Su hired Plaintiff Yin as a massage therapist for Defendant Corporation. In addition to his responsibilities of massage therapist, Plaintiff Yin was also charged with

cleaning duties of Spa, such as laundry bed sheets, clean the floors and walls of the Spa premises, clean the bathrooms, etc.

40. Defendant Su controlled and determined the work schedule of Plaintiff Yin.

41. Defendant Su determined the rates of compensation of Plaintiff Yin and methods of payment.

42. Defendant Su handled wage payments to Plaintiff Yin and maintained his employment records.

43. Plaintiff Yin was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

44. From on or around November 5, 2018 to on or around November 18, 2018, Plaintiff Yin worked six (6) days per week. On each of his workday, Plaintiff Yin worked without a break from 10:00 am to around 9:30 pm. Plaintiff Yin therefore worked for about eleven and one-half (11.5) hours per day, and or about sixty-nine (69) hours per week, for this stated employment period.

45. From on or around November 19, 2018 to on or around February 12, 2019, Plaintiff Yin worked five (5) days per week with Thursday and Friday off. On each of his workday, Plaintiff Yin worked without t a break from 10:00 am to around 9:30 pm. Plaintiff Yin therefore worked for about eleven and one-half (11.5) hours per day, and or about fifty-seven and one-half (57.5) hours per week, for this stated employment period.

46. Throughout his employment with the Defendants, Plaintiff Yin was paid at a fixed rate of $90.00 per day regardless the number of hours he actually worked each day.

47. Throughout his employment with the Defendants, Plaintiff Yin was paid monthly by checks.

48. Throughout his employment with Defendants, Plaintiff Yin was only required to sign in, but not to sign out, on each of his workday.

49. Throughout his employment with Defendants, Plaintiff Yin was not compensated for all hours worked above forty (40) in each workweek according to state and federal laws.

50. Throughout his employment with Defendants, Plaintiff Yin was not overtime-exempt under federal and state laws.

51. Defendants did not provide Plaintiff Yin with a correct wage statement with every wage payment.

52. As a massage therapist, Plaintiff Yin regularly received tips. Plaintiff Yin, however, was never given a notice regarding Defendants' intention to take tip credit against the minimum wage.


***Plaintiff Wang***

53. From on or around October 1, 2017 to on or around February 13, 2019, Plaintiff Wang was employed as a cosmetologist in Defendants' spa business under the name Yihan Spa located at 926 2nd Avenue, Unit 2, New York, NY 10022.

54. Upon information and belief, Defendant Su, known as "Lady Boss" to Plaintiffs, is the owner/shareholder of Defendant Corporation and maintains active operational control over Defendant Corporation, including but not limited to hiring and firing employees, supervising and controlling the employees, setting their work schedule, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

55. Upon information and belief, Defendant Allard, known as fiancée of Defendant Su, was present at the spa every day, and was in charge of arranging clients, supervising the

performance of Defendants' employees, monitoring the online feedback of Defendants' employees, as well as handling employees' paychecks when Defendant Su was not present at the spa.

56. Defendant Su hired Plaintiff Wang as a cosmetologist for Defendant Corporation. In addition to her responsibilities of cosmetologist, Plaintiff Wang was also charged with cleaning duties of Spa, such as laundry bed sheets, clean the floors and walls of the Spa premises, clean the bathrooms, etc.

57. Defendant Su controlled and determined the work schedule of Plaintiff Wang.

58. Defendant Su determined the rates of compensation of Plaintiff Wang and methods of payment.

59. Defendant Su handled wage payments to Plaintiff Wang and maintained her employment records.

60. Plaintiff Wang was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff) when she was hired, including but not limited to information about her rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

61. From on or around October 1, 2017 to on or around February 13, 2019, Plaintiff Wang worked five (5) days per week with Saturday and Sunday off. On each of her work day, Plaintiff Wang worked without a break from 10:00 am to around 8:00 pm (except that during the period between January 1, 2018 and February 28, 2018 Plaintiff Wang worked around 7 hours per day). Plaintiff Wang therefore worked for about ten (10) hours per day, and or about fifty (50) hours per week, for this stated employment period.

62. From on or around October 1, 2017 to on or around November 30, 2017, Plaintiff Wang was paid at a fixed rate of $100.00 per day regardless the number of hours she actually worked. For the month of December 2017, Plaintiff Wang was paid solely through commission of $20.00 per client, yet she was required to work the same schedule and was subject to Defendants' supervision. From January 2018 to April 2018, Plaintiff Wang was paid at a fixed rate of $10.00 per hour, yet without being paid at overtime time rate for hours she worked above 40 per week. From May 2018 to July 2018, Plaintiff Wang was paid at a fixed rate of $80.00 per day regardless the number of hours she actually worked per week. From August 2018 to on or around February 13. 2019, Plaintiff Wang was paid at a fixed rate of $100.00 per day regardless the number of hours she actually worked per week.

63. From on or around October 1, 2017 to on or around December 2017, Plaintiff Wang was paid monthly by cash. From December 2018 to April 2018, Plaintiff Wang was paid monthly by checks. From May 2018 to February 2019, Plaintiff Wang was paid via a combination of cash and monthly checks.

64. Throughout her employment with Defendants, Plaintiff Wang was only required to sign in, but not to sign out, on each of her workday.

65. Throughout her employment with Defendants, Plaintiff Wang was not compensated for all hours worked above forty (40) in each workweek according to state and federal laws.

66. Throughout her employment with Defendants, Plaintiff Yin was not overtime-exempt under federal and state laws.

67. Defendants did not provide Plaintiff Wang with a correct wage statement with every wage payment.

68. As a cosmetologist, Plaintiff Wang regularly received tips. Plaintiff Wang, however, was never given a notice regarding Defendants' intention to take tip credit against the minimum wage.

*Plaintiff Huang*

69. From in or about January 10, 2019 to on or about February 12, 2019, Plaintiff Huang was employed as an esthetician in Defendants' spa business under the name Yihan Spa located at 926 2nd Avenue, Unit 2, New York, NY 10022.

70. Upon information and belief, Defendant Su, known as "Lady Boss" to Plaintiffs, is the owner/shareholder of Defendant Corporation and maintains active operational control over Defendant Corporation, including but not limited to hiring and firing employees, supervising and controlling the employees, setting their work schedule, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

71. Upon information and belief, Defendant Allard, known as fiancée of Defendant Su, was present at the spa every day, and was in charge of arranging clients, supervising the performance of Defendants' employees, monitoring the online feedback of Defendants' employees, as well as handling employees' paychecks when Defendant Su was not present at the spa.

72. Defendant Su hired Plaintiff Huang as an esthetician for Defendant Corporation. In addition to her responsibilities of esthetician, Plaintiff Huang was also charged with cleaning duties of Spa, such as laundry bed sheets, clean the floors and walls of the Spa premises, clean the bathrooms, etc.

73. Defendant Su controlled and determined the work schedule of Plaintiff Huang.

74. Defendant Su determined the rates of compensation of Plaintiff Huang and methods of payment.

75. Defendant Su handled wage payments to Plaintiff Huang and maintained her employment records.

76. Plaintiff Huang was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff) when she was hired, including but not limited to information about her rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

77. Throughout her employment with Defendants, Plaintiff Huang worked five (5) days per week with Monday and Saturday off. On each of her workday, Plaintiff Huang worked without t a break from 10:00 am to around 9:30 pm. Plaintiff Huang therefore worked for about eleven and one-half (11.5) hours per day, and for about fifty-seven and one-half (57.5) hours per week, for this stated employment period.

78. Throughout her employment with the Defendants, Plaintiff Huang was paid at a fixed rate of $80.00 per day regardless the number of hours she actually worked each day.

79. Throughout her employment with the Defendants, Plaintiff Huang was paid monthly by checks.

80. Throughout her employment with Defendants, Plaintiff Huang was only required to sign in, but not to sign out, on each of her workday.

81. Throughout her employment with Defendants, Plaintiff Huang was not compensated for all hours worked above forty (40) in each workweek according to state and federal laws.

82. Throughout her employment with Defendants, Plaintiff Huang was not overtime-exempt under federal and state laws.

83. Defendants did not provide Plaintiff Huang with a correct wage statement with every wage payment.

84. As an esthetician, Plaintiff Huang regularly received tips. Plaintiff Huang, however, was never given a notice regarding Defendants' intention to take tip credit against the minimum wage.

***Plaintiff Zhang***

85. From on or about November 7, 2018 to on or about January 16, 2019, Plaintiff Zhang was employed as a cosmetologist in Defendants' spa business under the name Yihan Spa located at 926 2nd Avenue, Unit 2, New York, NY 10022.

86. Upon information and belief, Defendant Su, known as "Lady Boss" to Plaintiffs, is the owner/shareholder of Defendant Corporation and maintains active operational control over Defendant Corporation, including but not limited to hiring and firing employees, supervising and controlling the employees, setting their work schedule, determining their rates of compensation and methods of payment, handling payrolls, and maintaining employee records.

87. Upon information and belief, Defendant Allard, known as fiancée of Defendant Su, was present at the spa every day, and was in charge of arranging clients, supervising the performance of Defendants' employees, monitoring the online feedback of Defendants' employees, as well as handling employees' paychecks when Defendant Su was not present at the spa.

88. Defendant Su hired Plaintiff Zhang as a cosmetologist for Defendant Corporation. In addition to his responsibilities of cosmetologist, Plaintiff Zhang was also charged with cleaning duties of Spa, such as laundry bed sheets, clean the floors and walls of the Spa premises, clean the bathrooms, etc.

89. Defendant Su controlled and determined the work schedule of Plaintiff Zhang.

90. Defendant Su determined the rates of compensation of Plaintiff Zhang and methods of payment.

91. Defendant Su handled wage payments to Plaintiff Zhang and maintained his employment records.

92. Plaintiff Zhang was not provided a written wage notice, in English and in Chinese (the primary language identified by Plaintiff) when he was hired, including but not limited to information about his rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designated by Defendants.

93. From on or about November 7, 2018 to on or around November 30, 2018, Plaintiff Zhang worked six (6) days per week with either Monday or Tuesday off. On each of his workday, Plaintiff Zhang worked without a break from 10:00 am to around 9:30 pm. Plaintiff Zhang therefore worked for about eleven and one-half (11.5) hours per day, and or about sixty-nine (69) hours per week, for this stated employment period.

94. From on or around December 1, 2018 to on or around January 16, 2019, Plaintiff Zhang worked five (5) days per week with Monday and Tuesday off. On each of his workday, Plaintiff Zhang worked without t a break from 10:00 am to around 9:30 pm. Plaintiff Zhang therefore worked for about eleven and one-half (11.5) hours per day, and or about fifty-seven and one-half (57.5) hours per week, for this stated employment period.

95. Throughout his employment with the Defendants, Plaintiff Zhang was paid at a fixed rate of $80.00 per day regardless the number of hours he actually worked each day.

96. Throughout his employment with the Defendants, Plaintiff Zhang was paid monthly by checks.

97. Throughout his employment with Defendants, Plaintiff Zhang was only required to sign in, but not to sign out, on each of his workday.

98. Throughout his employment with Defendants, Plaintiff Zhang was not compensated for all hours worked above forty (40) in each workweek according to state and federal laws.

99. Throughout his employment with Defendants, Plaintiff Zhang was not overtime-exempt under federal and state laws.

100. Defendants did not provide Plaintiff Zhang with a correct wage statement with every wage payment.

101. As a cosmetologist, Plaintiff Zhang regularly received tips. Plaintiff Zhang, however, was never given a notice regarding Defendants' intention to take tip credit against the minimum wage.

## STATEMENT OF CLAIMS

### COUNT I

**[Violations of the Fair Labor Standards Act—Minimum Wage
Brought on behalf of Plaintiffs and the FLSA Collective]**

102. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

103. At all relevant times, upon information and belief, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. §206(a) and §207(a). Further, Plaintiffs are covered within the meaning of FLSA, U.S.C. §§206(a) and 207(a).

104.  At all relevant times, Defendants employed "employees" including Plaintiffs, within the meaning of FLSA.

105.  Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

106.  The FLSA provides that any employer engaged in commerce shall pay employees the applicable minimum wage. 29 U.S.C. § 206(a).

107.  At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the collective action members, for some or all of the hours they worked.

108.  The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

109.  Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

**COUNT II**

**[Violation of New York Labor Law—Minimum Wage**

**Brought on behalf of Plaintiffs]**

110.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

111.  At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

112.  Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

113.  Defendants knowingly and willfully violated Plaintiffs' rights by failing to pay her minimum wages in the lawful amount for hours worked.

**COUNT III**

**[Violations of the Fair Labor Standards Act—Overtime Wage**

**Brought on behalf of the Plaintiffs and the FLSA Collective]**

114.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

115.  The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

116.  The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages.  29 U.S.C. §216(b).

117.  Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime premiums violated the FLSA.

118.   At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

119.   The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

120.   Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

121.   Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

**COUNT IV**

**[Violation of New York Labor Law—Overtime Pay**

**Brought on behalf of Plaintiffs]**

122.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

123.   Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

124.   Defendants' failure to pay Plaintiffs their overtime premiums violated the NYLL.

125.   Defendants' failure to pay Plaintiffs was not in good faith.

**COUNT V**

**[Violation of New York Labor Law—Time of Hire Wage Notice Requirement**

**Brought on Behalf of Plaintiffs]**

126.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

127.   The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

128.   Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment.

129.   Defendants not only did not provide notice to each employee at Time of Hire but also

failed to provide notice to Plaintiffs thereafter.

130.   Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

**COUNT VI**

**[Violation of New York Labor Law—New York Pay Stub Requirement
Brought on Behalf of Plaintiffs]**

131.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

132.   The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

133.   Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff and did not provide the paystub on or after each Plaintiff's payday.

134.   Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

**COUNT VII**

**[Violation of New York Labor Law—Spread of Hours**

**Brought on behalf of Plaintiff Yin, Plaintiff Huang and Plaintiff Zhang]**

135.   The "spread of hours" is the number of hours from the time that an employee started working on a particular day until the time that he or she stopped working for the day. 12 NYCRR § 137-1.7, 12 NYCRR 146-1.6 (effective 1/1/2011, formerly 12 NYCRR § 137-1.7), New York State Department of Labor Regulations § 137-1.7 provides that an employer is required to pay an employee an extra hour of pay at the full minimum wage, without allowances, for each day in which the employee's spread of hours exceeds ten. This "spread of hours" regulation is applicable even if there is a split shift.

136.   Throughout his employment with the Defendants, Plaintiff Yin, Plaintiff Huang and Plaintiff Zhang routinely worked a "spread of hours" of more than 10 hours per day.

137.   Despite the fact that Plaintiff Yin, Plaintiff Huang and Plaintiff Zhang routinely worked a "spread of hours" greater than 10 hours per day throughout their employment with the Defendants, Defendants did not pay Plaintiff Yin, Plaintiff Huang and Plaintiff Zhang any additional compensation as required by the regulations.

138.   Defendants' failure to pay spread of hours compensation was willful and intentional.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, and the FLSA Collective Plaintiffs, respectfully requests that this Court enter a judgment providing the following relief:

a)   Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the

action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b) Certification of this case as a collective action pursuant to FLSA;

c) Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the Collective Action Members;

d) A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

e) An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f) Award Plaintiffs unpaid wages, unpaid overtime, unpaid spread of hours due under the FLSA and the New York Labor Law;

g) An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL;

h) The cost and disbursements of this action;

i) An award of prejudgment and post-judgment fees; and

j) Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
March 5, 2019

Respectfully Submitted,

HANG & ASSOCIATES, PLLC


By: /s/ _ *Xiaoxi Liu*_____ ___
   Xiaoxi Liu, Esq.
   136-20 38th Ave. Suite 10G
   Flushing, NY 11354
   Tel: (718) 353-8588
   Fax: (718) 353-6288
   Email: xliu@hanglaw.com
   *Attorneys for Plaintiffs and Proposed FLSA*
   *Collective*

# EXHIBIT A

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by CARIBBEAN BLUEWATERS GROUP, LLC d/b/a Yihan SPA, Amy Su, and and/or related entities and individuals.

I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_Colin Lei Yin_
Full Legal Name (Print)

_____
Signature

_2 / 15 / 2019_
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by CARIBBEAN BLUEWATERS GROUP, LLC d/b/a Yihan SPA, Amy Su, and and/or related entities and individuals.

I consent to be a plaintiff in an action to collect unpaid wages.  I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_Wang, Fang_
Full Legal Name (Print)

_[signature]_
Signature

_02/15, 2019._
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by CARIBBEAN BLUEWATERS GROUP, LLC d/b/a Yihan SPA, Amy Su, and and/or related entities and individuals.

I consent to be a plaintiff in an action to collect unpaid wages.  I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_Yue Ping Huang_
Full Legal Name (Print)

_Yue_
Signature

_2 / 22 / 2019_
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by CARIBBEAN BLUEWATERS GROUP, LLC d/b/a Yihan SPA, Amy Su, and and/or related entities and individuals.

I consent to be a plaintiff in an action to collect unpaid wages.  I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_Yu Zhang_
Full Legal Name (Print)

_(signature)_
Signature

_2/22/2019_
Date